Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50302 | **DATE** | July 12, 2001 |
| **CASE TITLE** | BARRINGER v. MASSANARI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. Enter attached Memorandum Opinion and Order

(11) ■ [For further detail see reverse/attached order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 12 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| TML | courtroom deputy's initials | 2001 JUL 12 AM 8:48 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

FILED-WD
2001 JUL 12 AM 8:48
U.S. CLERK
DISTRICT COURT
DOCKETED
JUL 12 200

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| LINDA M. BARRINGER, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 00 C 50302 |
| ) | |
| LARRY G. MASSANARI, ) | Judge Phillip G. Reinhard |
| Acting Commissioner Social ) | Magistrate Judge P. Michael Mahoney |
| Security Administration ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Linda M. Barringer ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). See 42 U.S.C. §§ 405 (g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Title II, 42 U.S.C. §§ 416 (I), 423, and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 (a). This matter is before Magistrate Judge Mahoney pursuant to consents filed by both parties on November 3, 2000. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

### I. BACKGROUND

Plaintiff filed an application for DIB and SSI benefits on October 3, 1996. (Tr. 69-83). Plaintiff alleged an inability to work since January 31, 1990, based on impairments due to diabetes mellitus, coronary heart disease, carpal tunnel syndrome and hypertension. (Tr. 72). Plaintiff's initial application for benefits was denied on October 26, 1996. (Tr. 26). Plaintiff submitted a request for

1

reconsideration on February 2, 1997. (Tr. 30-32). Upon reconsideration, Plaintiff's request for benefits was denied on February 7, 1997. (Tr. 33-35). On December 15, 1997, Plaintiff requested a hearing before the Administrative Law Judge (ALJ). (Tr. 36-37). On October 27, 1998, Plaintiff appeared, with counsel, and testified at a hearing before the ALJ. (Tr. 497-534). Upon review the ALJ denied Plaintiff's application on December 19, 1998. (Tr. 14-19). The ALJ found that Plaintiff's impairments did not meet nor equal the level of severity contemplated for any impairment listed in Appendix 1 to Subpart P, Regulations No.4. (Tr. 14-19). The Appeals Council denied review on July 14, 2000, and the ALJ's decision then became the final decision of the agency. (Tr. 7-8).

## II  FACTS

At the time of the ALJ's hearing, Plaintiff was a forty-nine year old female, born on August 23, 1949, in LaGrange, Georgia.(Tr. 69). Plaintiff completed a high school education, and her most recent work experience includes babysitting for the Illinois Department of Public Aid, intermittently from 1994 to 1996, and supervising approximately twenty maintenance persons at the Rockford Metro Center in 1989. (Tr. 69, 80-81, 509-510). Prior to this, Plaintiff worked at All Rental Garments pressing and hanging shirts.(Tr. 508-509). Plaintiff is not currently employed and has not been employed since 1990, when her impairments first developed. (Tr. 70). These impairments include diabetes, hypertension, chronic fatigue and coronary artery disease. (Tr. 72). Plaintiff testified that she lives alone with two minor children. (Tr. 511). Plaintiff further testified that her adult son comes over approximately two to three times a week to assist her with household chores. (Tr. 511). Without this help, Plaintiff asserted, the household chores would take all day to perform

2

and result in shortness of breath and increased fatigue. (Tr. 530). As is, the Plaintiff asserts that she must take frequent breaks and rest when performing even light household chores, such as sweeping or dusting. (Tr. 530-531). Therefore, Plaintiff spends most of her day watching television, primarily soap operas and game shows. (Tr. 528). Plaintiff is able to read, socialize and attend church on Sundays, as well as most of her child's school activities. (Tr. 251, 528-529). Plaintiff stated that while she does not exercise outdoors, she is able to exercise indoors using an exercise bike and the "Ski Master Walker". (Tr. 527-528). However, Plaintiff also testified that she experiences shortness of breath and chest discomfort when she attempts to walk more than a block. (Tr. 528).

A vocational assessment performed on September 4, 1997, documented that Plaintiff possesses skills that are transferable to a significant number of jobs. (Tr. 128). Mr. Hewitt Douglass, a Vocational Assessment Specialist, used Vocational Rule 202.22 to determine that the Plaintiff is not disabled. (Tr. 128). Dr. Hewitt opined that Plaintiff has the capacity to perform as a Short Order Person (hotel and restaurant), 313.374-014, Pantry Goods Maker (hotel and restaurant) 317.684-014 and Formula Room Worker (dairy products; medical services) 520.487-014. (Tr. 128). He further noted that U.S. Bureau of the Census, County Business Patterns Illinois 1993 reported that 6,686 persons are employed in the dairy products industry, 358,643 in hotel and restaurant industry and 476,614 in health care services. (Tr. 128).

### III. MEDICAL HISTORY

On November 12, 1991 and February 4, 1992, Plaintiff underwent surgery to correct the effects of bilateral carpal tunnel syndrome on the right and left hand. (Tr. 142-148). On February 5, 1996, Plaintiff reported to Rockford Memorial Hospital that she was experiencing recurrent

3

problems of tingling and numbness in her hands and feet. The hospital associated these problems with Plaintiff's diabetes mellitus and prescribed a monitored diet and regular doses of insulin. (TR 174-176). Plaintiff was admitted to Rockford Memorial Hospital, on April 1, 1996, complaining of chest pains. (Tr. 177-179). During her admission Plaintiff underwent angioplasty with stenting of the left anterior descending artery. (Tr. 177-179). Plaintiff was discharged on April 10, 1996 after numerous tests indicated that she was stable. (Tr. 177). A follow up phone call on April 17, 1996 found Plaintiff in good health with no indication of pain. (Tr. 245).

On May 14, 1996, Plaintiff was readmitted to the emergency room at Rockford Memorial Hospital after suffering from increased chest pain and discomfort. (Tr. 189). Although initial electrocardiograms (EKG) were normal and there was no apparent evidence of myocardial damage, a coronary angiography revealed a stenosis around the intracoronary stent. (Tr. 194-200). Because of this discovery, an angioplasty of the second diagonal artery was performed on May 16, 1996. (Tr. 198). The procedure was successful and Plaintiff was discharged on May 19, 1996. (Tr. 201). However, on May 23, 1996, Plaintiff was readmitted to the emergency room after experiencing chest discomfort and pain. (Tr. 222-228). The EKG reported no significant changes and myocardial infarction was ruled out. (Tr. 222). Plaintiff was, therefore, released on May 26, 1996. (Tr. 222). An outpatient treadmill stress test was administered on June 19, 1996. (Tr. 224). The treadmill stress test was negative for both ischemic changes and arrhythmias. (Tr. 224, 203).

Plaintiff next visited Rockford Memorial Hospital emergency room on October 27, 1996, with complaints of intermittent bilateral ear drainage and frequent ear pain. (Tr. 220). Plaintiff was released with prescriptions of Amoxicillin and Cortisporin. (Tr. 220). On November 18, 1996, Plaintiff was again admitted to Rockford Memorial Hospital after experiencing numbness and pain

4

in her left arm and hand. (Tr. 142). Plaintiff was diagnosed with chronic left ulnar neuropathy with weakness in the ulnar distribution of the left upper extremity. (Tr. 142). Although advised to undergo a procedure to relieve this ailment; it does not appear that the Plaintiff ever underwent surgery. (Tr. 142). From December 19, 1996 to December 31, 1996 Plaintiff visited the Crusader Clinic on multiple occasions, complaining of dizziness, chest pain, blurred vision and flu like symptoms. (Tr. 282-284). On December 16, 1996, Plaintiff was admitted to Swedish American Hospital. Plaintiff complained of dizziness, nausea and abdominal discomfort. (Tr. 286). During her admission, Plaintiff was diagnosed with diabetic ketoacidosis and given a regular insulin drip. (Tr. 286). While in the hospital, Plaintiff also experienced an episode of chest pain. (Tr. 286-288). A chest x-ray and electrocardiogram revealed no significant results and Plaintiff was released on December 18, 1996. (TR. 286-288).

In February 1997, Plaintiff was admitted to Rockford Memorial Hospital with complaints of chest pain that increased with the advent of activity.(Tr. 291). Plaintiff underwent left heart catherization, as well as coronary and left ventricular angiography. (Tr. 292). The procedures revealed that the left anterior descending coronary artery was totally occluded proximally, at the site of the previously-placed stent. (Tr. 291-293). The procedure further revealed very faint filling of the distal left anterior descending coronary via left-to-left collaterals. (291-293). There also appeared to be about 40% narrowing right at the origin of the diagonal branch. (Tr. 293).

In February through April of 1997, Plaintiff intermittently attended the Crusader Clinic for diabetic and routine checkups. (Tr. 271-76). During a routine checkup, on March 1, 1997, Plaintiff complained of fatigue, shortness of breath and chest pains. (Tr. 271). On April 16, 1997, Plaintiff underwent double vessel coronary artery bypass surgery at Rockford Memorial Hospital. (Tr. 318-

5

325). After the surgery, Plaintiff was given the option of either a home based exercise rehabilitation program or a hospital based program. (Tr. 330). Plaintiff stated that she preferred a hospital based exercise rehabilitation program. (Tr. 340). Therefore, on May 5, 1997, Plaintiff began Phase II of the Cardiac Rehabilitation Program at Rockford Memorial Hospital. (Tr. 386). Plaintiff entered the program at MET level 1.5 and completed the program at MET level 2.5, in eight weeks. (Tr. 386). Ms. Joellen Ring, registered nurse within the program, reported that the Plaintiff consistently complained of shortness of breath. (Tr. 386). The importance of exercising was stressed to the Plaintiff and an at home exercise program was developed. (Tr. 386).

On April 10, 1997, Plaintiff was first evaluated by the Illinois Department of Rehabilitation Services. (Tr. 373). Dr. Kamlesh Ramchandani noted that Plaintiff did not appear in physical distress nor was she disorientated. (Tr. 373). Dr. Ramchandani further noted that Plaintiff could lift approximately 10 to 15 pounds with both hands together and pick up a pen and penny, from a table, without dropping them. (Tr. 373-374). Plaintiff was also able to open and close a door with both hands equally well, walk on her heels and toes, get on and off the examination table without difficulty and dress and undress herself without assistance. (Tr. 374-75). Although Plaintiff's motor strength was 5/5 other than her grip strength and 4/5 bilaterally, Plaintiff did suffer vague sensory loss in both hands. (Tr. 374-375).

Plaintiff was reexamined by Dr. Ramchandani on July 1, 1997. (Tr. 410-411). The physical examination revealed Plaintiff to be alert with stable vital signs. (Tr. 411). Plaintiff's blood pressure was 150/90 and her bilateral grip was 5/5 and normal. (Tr. 411). Dr. Ramchandani reported that Plaintiff was able to walk on her heels and toes, squat and get up from squatting position without assistance, get on and off the examination table without difficulty, and dress and undress herself

without assistance. (Tr. 410-411). At that time, Plaintiff articulated to Dr. Ramchandani that she still suffered from chest pains and tightness in the chest. (Tr. 410). On July 29, 1997 Plaintiff was admitted to Rockford Memorial Hospital and underwent left heart catheterization as well as coronary and left ventricular and bypass graft angiography. (Tr. 378-379). The procedures revealed that there were no obstructions in the left main coronary artery and the circumflex system was small and free of any significant narrowing. (Tr. 378). A physical examination and treadmill test on September 28, 1997 yielded results which were negative at 5 METS. (Tr. 426-435). Although, the tests revealed no ischemic changes, the heart rate test was aborted due to pre-cardial chest pain. (Tr. 426-435).

In 1997, Plaintiff underwent both psychological and physical examinations to determine her functional capacity. (Tr. 418, 436). On August 1, 1997, Plaintiff was interviewed by a psychiatrist, Dr. Donald Maclean, for the Social Security Administration Agency. (Tr. 417). Dr. McLean reported that Plaintiff did not suffer from any mental impairments; rather, her problems appeared to be of a purely physical nature. (Tr. 418). On October 7, 1997, Plaintiff underwent a physical residual functional capacity assessment. (Tr. 436). The evaluation determined that Plaintiff could lift or carry twenty pounds occasionally, ten pounds frequently and stand or walk, with normal breaks, for about six hours in an eight hour work day. (Tr. 436-443).

Plaintiff was admitted to Rockford Memorial Hospital on April 30, 1998, after complaining of weakness, dizziness and nausea. (Tr. 447-452). Plaintiff was diagnosed with diabetic ketoacidosis, likely precipitated by a possible infection or noncompliance with medications. Plaintiff asserted that she had run out of insulin several days prior to her admittance and was unable to obtain prescriptions refills. (Tr. 447-448). During her stay, Plaintiff underwent anterior-posterior and lateral chest exams. The tests failed to reveal evidence of any active disease and showed that the cardiac

and mediastinal contours remained within normal limits. (Tr. 459). As a result, plaintiff was released from the hospital on May 3, 1998. (Tr. 447-452).

On July 21, 1998, Dr. Ali, Plaintiff's treating physician at Crusader Clinic, filled out a Functional Capacity Questionnaire regarding Plaintiffs physical capabilities. (Tr. 461-465). Dr. Ali noted that he first came in contact with the Plaintiff in December 1996 and subsequently saw her approximately every 6-8 weeks. (Tr. 461). Dr. Ali noted that Plaintiff often experienced pain severe enough to interfere with attention or concentration and that Plaintiff is markedly limited in dealing with work related stress. (Tr. 462). He further reported that Plaintiff could sit for less than five hours, stand for less than two hours, and walk for no more than one hour in an eight hour work day. (Tr. 462). Dr. Ali also reported that Plaintiff could perform simple grasping in both the right and left arms but could not perform arm control or fine manipulation in either arm. (Tr. 463). It was also noted that Plaintiff could walk no more than one block before experiencing severe pain or needing a rest. (Tr. 463). Dr. Ali opined that Plaintiff could bend, stoop, balance, crouch and kneel as needed but could not crawl or climb. (Tr. 462). Dr. Ali also opined that Plaintiff would require complete freedom to rest frequently throughout the day and the ability to periodically elevate her legs waist high. (Tr. 464). Dr. Ali stated that Plaintiff would likely be absent three or more days a month as a direct result of her physical impairments. (Tr. 470). Lastly, Dr. Ali asserted that Plaintiff's limitations were temporary and would last for more than one year. (Tr. 465).

## IV STANDARD OF REVIEW

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the

court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than

9

subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D.Ill. 1995).

V. **FRAMEWORK FOR DECISION**

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past;

---

[1] The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent

---

[2]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala*, 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy

that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

**II      ANALYSIS**

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing Step One of the Analysis, the ALJ found that the Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision issued on December 19, 1998. (Tr. 14). Plaintiff had not been engaged in any substantial gainful activity since 1989. (Tr. 508).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than five hundred dollars per month for years after 1989. (20 CFR § 1575 (b) (2)).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis, the ALJ found that the Plaintiff suffered from severe impairments. Specifically, the ALJ found that Plaintiff suffered from coronary artery disease, diabetes mellitus, carpal tunnel syndrome and hypertension. (Tr. 14). The impairment significantly limits her ability to perform basic work activities and is therefore severe. (Tr. 72).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from severe impairments. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

13

C. Step Three: Does claimant's impairment meet or medically equivalent to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three, the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 14-18). The ALJ found that Plaintiff's allegations of disabling symptoms and limitations were not fully credible.

Substantial evidence exists to support the ALJ's finding, and the court finds no reason to disturb it. The record demonstrates that Plaintiff's claim of disability rests primarily on the assessment of her primary care physician, Dr. Ali. The ALJ asserted that little weight should be granted to Dr. Ali's opinion because it was not supported by the medical evidence and laboratory tests. The ALJ noted that Plaintiff's most recent chest x-rays and electrocardiograms revealed no signs of active disease and were within normal limits. (Tr. 459). The ALJ also found that Dr. Ali's opinion was inconsistent with other substantial evidence in the record. Although Dr. Ali opined that Plaintiff could not perform fine manipulation, a physical examination revealed a motor strength of 5/5 other than grip strength and 4/5 bilaterally, as well as her ability to pick both a pencil and coin up off of a table without difficulty. (Tr. 374-375). Plaintiff's struggle with diabetes mellitus and hypertension appear to be under control with continued medication. (Tr. 274). Therefore, the ALJ's determination as to Step Three of the Analysis is affirmed.

D. Step Four: Is the claimant capable of performing work which the claimant performed in the past?

In performing the analysis for Step Four, the ALJ initially determined that Plaintiff is capable of performing her past relevant work. However, the Defendant concedes that the ALJ incorrectly

14

stated that the Plaintiff could perform a full range of light work. Rather, Plaintiff's Residual Functional Capacity (RFC) assessment revealed that Plaintiff could lift or carry twenty pounds occasionally, ten pounds frequently and stand or walk, with normal breaks for approximately six hours in an eight hour work day. (Tr. 436-443). After considering all of Plaintiff's impairments the ALJ determined that she retained a residual functional capacity to perform work that did not require sitting or standing for more than two hours in an eight hour work day or lifting more than ten pounds frequently or twenty pounds occasionally. (Tr. 18-19).

In Plaintiff's previous positions she pressed and hung shirts, babysat a number of small children and supervised a crew of approximately 20 maintenance persons. (Tr. 69, 80-81, 509-510). All of these positions require that Plaintiff stand or walk in excess of the ALJ's residual functional capacity determination for walking and standing. (Tr. 18-19). Because of this limitation, Plaintiff can not perform her previous positions, which were categorized in the full range of light work. An examination of the Medical-Vocational Guidelines (Grids) reveal that Plaintiff is fully capable of performing a full range of sedentary work and, is therefore, not deemed disabled. (Tr. 18-19). However, this classification also reveals that she is unable to perform the full range of light work and thus is unable to return to her previous type of employment. Therefore, the ALJ's determination as to Step Four of the Analysis is incorrect. The ALJ did proceed to Step Five of the Analysis.

E.  Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

The Plaintiff bears the burden of proof in the first four steps of the analysis; if that burden is met, the burden then shifts to the Commissioner at Step Five to identify jobs that the Plaintiff can perform. 20 C.F.R. §§ 404.1520 (a)-(f). *See Young v. Secretary of Health and Human Services,* 957

15

F.2d 386, 389 (7th Cir. 1992). At Step Five the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R.§§ 404.1520 (f), 404.1566. The Commissioner must show, by a clear indication, that an application of the shift of the burden of proof from the Plaintiff to the Social Security Administration (SSA) occurred. Social Security Law and Practice, Volume 3, § 43:137.

The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education and work experience coincide exactly with the rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2, *Walker v Brown*, 834 F. 2d 635,640 (7th Cir. 1987).

In the case at bar the ALJ utilized the grids to determine that Plaintiff is capable of performing work that exists in substantial numbers in the economy. (Tr. 17). The ALJ found that Plaintiff is a 49 year old woman, classified as a younger individual (age 45-49), who possesses a high school education and has performed semi-skilled work in the past, even though the acquired skills are non-transferable. (Tr. 18). The ALJ used these vocational characteristics, together with her residual functional capacity for the full range of sedentary work to determine that Plaintiff could perform a significant number of jobs in the economy. (Tr. 18). Plaintiff's residual functional capacity assessment determined that she could lift or carry twenty pounds occasionally, ten pounds frequently and stand or walk, with normal breaks, for about six hours in an eight hour work day. (Tr. 436-433). It further revealed that she possessed no visual, postural, manipulative, or communicative limitations. (Tr. 438-440). The ALJ initially determined that Plaintiff could perform the full range of light work. (Tr. 18-19). However, a detailed examination of the RFC reveals that Plaintiff has the functional capacity to perform a limited range of light work and the full range of sedentary work.

(Tr. 18-19). This error is not fatal since both the RFC and the grids reveal that Plaintiff's capacity is at least consistent with the full range of sedentary work.. (Tr. 18-19). Furthermore, "no principle of administrative law or common sense requires [the court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result, [citation omitted]" *Fisher v. Brown*, 869 F.2d 1055, 1057 (7th Cir. 1989). Although a detailed grid analysis was not performed the ALJ is affirmed at Step Five. Plaintiff clearly falls within the grids and her medical record and residual functional capacity present substantial evidence to support the ALJ's decision as to Step Five.

The review of the court is not *de novo* and the court "may not decide the facts anew, reweigh the evidence or substitute its own judgement for that of the ALJ." *Meredith v. Brown*, 833 F.2d 650,654 (7th Cir. 1987) (citation omitted), *see also Degaldo v. Bowen,* 782 F.2d 79,82 (7th Cir. 1986). Review by the court is, therefore, limited to a determination of legal standards and an examination into the presence of substantial evidence in the record to support the findings. 42 U.S.C. § 405 (g). The Supreme Court has defined substantial evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389,401, 91 S. Ct. 1490, 1497 (1971). In providing substantial evidence, the ALJ must, "minimally articulate his reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan,* 966 F. 2d 1070, 1076 (7th Cir. 1992). By presenting minimal articulation, the ALJ must provide an opinion that allows a reviewing court to trace the path of his reasoning. *Walker v. Bowen,* 834 F.2d 635,643 (7th Cir. 1987); *Nelson v. Apfel,* 131 F.3d 1228 (7th Cir. 1997). The ALJ proffered the minimal level of articulation necessary to enable the court to follow the fifth step of the sequential analysis .

Therefore, the determination by the ALJ as to Step Five of the sequential analysis is affirmed.

## II  CONCLUSION

For the above reasons, the ALJ is affirmed at each step of the disability determination. Defendant's motion for summary judgement is hereby granted. Plaintiff's motion for judgement on the administrative record and pleadings is denied.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 1/12/01